Betty JONES, Appellee,

v.

A. E. LENNINGTON, Appellant,

and

The First National Bank of Sallisaw, a Corporation, Appellee.

No. 52294.

Court of Appeals of Oklahoma, Division No. 2.

March 31, 1981.

Released for Publication by Order of Court of Appeals April 30, 1981.

Harry Scoufos, Scoufos & Montgomery, Sallisaw, for appellee Betty Jones.

Jim Jones, Sallisaw, for appellant.

S. Daniel George, Sallisaw, for appellee First National Bank.

BRIGHTMIRE, Judge

The issue to be resolved is whether or not the amount of punitive damages set by the jury was so disproportionate to the actual damages awarded as to require the court, as a matter of law, to condemn it as excessive and as the result of "passion, prejudice, or improper sympathy" created by the prevailing party. We hold the record does not

show the punitive damage award to be excessive or the result of any inappropriate predilections or psychic disturbances on the part of the jury.

I

The controlling orientational facts are largely undisputed. The parties were married for 26 years. Following a divorce in February, 1974, plaintiff, Betty Jones, asked defendant First National Bank of Sallisaw to change to her name only an existing savings account standing in her name and that of her former husband. A bank employee got the joint account card, marked through the names and then "changed the name on the card" to Betty Lennington, now Jones. The same thing was done on the passbook possessed by plaintiff.

Later, Betty Jones deposited over $7,000 in the account which money she received as part of a property division settlement. On July 20, 1976, defendant A. E. Lennington went to the bank and asked to withdraw $7,000. The bank paid it to him after having him sign a card committing himself to hold it harmless for any loss it might suffer as a result.

Lennington admitted also that while visiting in his daughter's home he found and took some wedding rings belonging to his former wife. He denied, however, that he took a Kimel Western Six Combo pistol Jones said she owned.

Plaintiff's efforts to regain her property were unsuccessful, so in September, 1976, she filed this action against the bank and Lennington charging that the bank wrongfully allowed Lennington to withdraw $7,000 she had deposited and which the bank was holding in trust for her. In a second cause of action plaintiff sought $1,500 from Lennington for the conversion of her wedding rings and $75 for the pistol. And, she alleged, because the taking of her property was wanton and malicious, she

was entitled to $25,000 punitive damages against her former husband.

Lennington's defense was that: (1) he did not take the pistol; (2) the rings belonged to him; and (3) the $7,000 he withdrew from the First National Bank was from a joint account standing in the name of A. E. Lennington and Betty E. Lennington and that "as a joint tenant he was entitled under the law to withdraw said funds."

At trial evidence was adduced sufficient to support a finding that Lennington wantonly and surreptitiously converted plaintiff's wedding rings worth $1,500 and that he maliciously prevailed upon the bank to allow him to withdraw $7,000 from what at one time had been a joint account.[1] There was justification also for a finding that the money in the "joint" account belonged to plaintiff and that Lennington knew it did. Finally, the fact finders could have properly found that the bank had promised to transform the joint account into one in the name of plaintiff only and that at the very least it was negligent in paying the money out to Lennington. The jury evidently made these findings because they returned a verdict against Lennington for $1,500 actual and $17,000 punitive damages, and one against the bank for $7,000. Judgment was rendered accordingly along with one in favor of the bank against Lennington for $7,000. The bank does not, of course, appeal, but Lennington does and, as we mentioned earlier, offers a single assignment of error—that the amount of punitive damages is excessive.

II

Lennington agrees that punitive damages may be awarded when a defendant's conduct amounts to fraud, oppression, malice, or gross negligence. His argument is, however, that the jury in assessing such damages should take into consideration all extenuating circumstances—that is, the fact

---

1. Though there was evidence that drawing a line through Lennington's name was technically not the correct way to dissolve the joint nature of the account, still it was a bank employee who did so and caused plaintiff to think she had effected an account change to her name only.

that the parties were married for 26 years, raised three girls, and then lived together for several months following the divorce. This, he suggests, the jury apparently failed to do because they made an award that was considerably disproportionate to the actual damages awarded and, therefore, unreasonable.

■ Whether his "circumstances" argument would have had any persuasive effect on the jury we cannot say. We can say, however, it fails to have any on us. The question of how much to award is "peculiarly within the province of the jury." *Oller v. Hicks*, Okl., 441 P.2d 356 (1967). The fact that the parties were married for many years, raised three children and lived together after their divorce does not afford defendant any kind of a legal or even a moral excuse for offending the property rights of plaintiff.

And so far as other defensive matters are concerned, Lennington's "explanation" as to his ownership of the rings is a tenuous one and in our mind tends to exacerbate rather than to extenuate. Even if he did think he owned the rings—something that is a mite difficult to believe—he had no right to surreptitiously invade his former wife's domain, even if it was a temporary abode, and sneak off with her possessions like a common thief in the night. Similar condemnation can be made of the manner in which he procured plaintiff's bank funds. It is hard to imagine that Lennington did not know plaintiff claimed the $7,000. And, if he did, he was obliged by both law and common decency to consult with plaintiff concerning his intention before taking the money from the bank.

■ An award for punitive damages will not be held to be excessive " 'unless it appears to be grossly so or the result of passion, prejudice or improper sympathy.' " *Basden v. Mills*, Okl., 472 P.2d 889 (1970). We cannot say with any confidence that the award here was grossly excessive, so far as passion or prejudice is concerned. The record discloses nothing supportive of a conclusion that such psychic phenomenon possessed the jurors beyond what might have developed as a normal human response to Lennington's inexcusable malfeasance.

Complaint was not made in his petition in error that the award lacks foundation proof as to Lennington's financial worth or that the amount awarded is grossly disproportionate to what it would take to inflict a significant degree of deterring punishment. *Basden* does discuss a concern about the proportional relationship between the actual and punitive award and defendant offers the discussion apparently as a basis for persuading us that a remittitur of some kind should be granted. The trouble with this is that nothing we have seen in the record imbues us with the exalted feeling that we are in a better position than the jury to determine what amount of exemplary damages would or would not be adequate. The mere fact that an actual and punitive award may be disproportionate surely cannot be a basis for arbitrary appellate interference with the considered judgment of a jury. An award of one dollar nominal damages for an especially egregious tortious act of a defendant may, for example, call for up to a million times that amount in punitive damages. The two main criteria are: (1) how much will it take to punish defendant in terms of money; and (2) how much should he be punished under the circumstances of the case. Since defendant made no complaint of the first element in his petition in error and has not argued the point, we cannot consider it.

For these reasons we decline to disturb the jury's verdict.

Affirmed.

BOYDSTON, J., concurs.

BACON, P. J., concurs in result.